IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

SHEILA ANN MOSES                                                                               PLAINTIFF

V.                              CASE NO. 5:16-CV-00060 DPM/BD

NANCY A. BERRYHILL, Acting Commissioner
Social Security Administration                                                                DEFENDANT

## RECOMMENDED DISPOSITION

**I.     Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Judge D.P. Marshall, Jr.  You may file written objections to this Recommendation.  If you file objections, they must be specific and must include the factual or legal basis for your objection.  Your objections must be received in the office of the United States District Court Clerk within fourteen (14) days of this Recommendation.

If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record.  By not objecting, you may also waive any right to appeal questions of fact.

**II.   Introduction**:

Plaintiff, Sheila Ann Moses, applied for disability benefits on April 9, 2013, alleging a disability onset date of April 5, 2013.  (Tr. at 20)  After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application.  (Tr. at 29)  The Appeals Council denied her request for review (Tr. at 1); thus, the ALJ's decision now stands as the Commissioner's final decision.  Ms. Moses filed this appeal requesting judicial

review.

### III. The Commissioner's Decision:

The ALJ found that Ms. Moses had not engaged in substantial gainful activity since the alleged onset date of April 5, 2013. (Tr. at 22) At Step Two, the ALJ found that Ms. Moses has the following severe impairments: coronary artery disease, fibromyalgia, diabetes mellitus, inflammatory arthritis, and left shoulder injury. *Id.*

After finding that Ms. Moses's impairments did not meet or equal a listed impairment (Tr. at 23), the ALJ determined that Ms. Moses had the residual functional capacity ("RFC") to perform light work with limitations. She could use both arms, particularly the right dominant arm, to frequently reach, handle, finger, and feel. (Tr. at 24) The ALJ found that as of April 2014, Ms. Moses could lift no more than ten pounds with the left, non-dominant arm and could reach overhead only occasionally with the left, non-dominant arm. *Id.*

At Step Five, after obtaining testimony from a Vocational Expert ("VE"), the ALJ found that Ms. Moses could perform past relevant work, which directs a finding of "not disabled." (Tr. at 29) Based on that Step Five determination, the ALJ found that Ms. Moses was not disabled. *Id.*

### IV.   Discussion:

The Court's role is to determine whether the Commissioner's findings are supported by substantial evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).

"Substantial evidence" in this context means "enough that a reasonable mind would find it adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009)(citation omitted).  The Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome.  Even so, the Court cannot reverse the decision, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (quoting *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996)).

    A.  Ms. Moses's Arguments on Appeal

Ms. Moses argues that the ALJ's decision to deny benefits is not supported by substantial evidence because: 1) the ALJ erroneously assessed her credibility; 2) the ALJ gave improper weight to the state-agency medical consultants; and 3) the Appeals Council failed to adequately consider new evidence she submitted after the ALJ's decision.

Ms. Moses complained of morning stiffness lasting 3-4 minutes and generalized fatigue at a February 17, 2012 visit to the Alsebai Rheumatology clinic.  (Tr. at 298)  She has stated that her symptoms began in June 2011, but has provided no records from that time.  *Id*.  At the February 2012 visit, her straight-leg raise was negative and she had normal range of motion without pain in her neck, shoulder, elbow, wrist, knee and ankle.  (Tr. at 301-302)  Dr. Alsebai diagnosed myalgia and myositis.  (Tr. at 302)  He noted that Ms. Moses was last seen in his office on January 7, 2009, at which time he prescribed

prednisone, which she did not take. (Tr. at 299) She missed her follow-up appointments with Dr. Alsebai. (Tr. at 299).

On March 5, 2012, Ms. Moses was seen at Family Medicine Associates. (Tr. at 359) At that appointment, she said that she felt much better and that her pain was better. *Id*. She followed up with Dr. Abselai on April 16, 2012, complaining of generalized pain and fatigue. (Tr. at 293) He again found normal range of motion without pain in her neck, shoulder, elbow, wrist, hip, knee, and ankle. (Tr. at 295) He diagnosed positive rheumatoid factor, myalgia, and osteoarthritis. (Tr. at 296) He prescribed Lyrica and Flexeril. *Id.*

Ms. Moses went to the Jefferson Regional Medical Center on March 4, 2013, complaining of radiating chest pain. (Tr. at 386) A chest x-ray revealed an aortic aneurysm with no active disease. (Tr. at 400) Cardiac exam showed regular heart rate and rhythm, with no murmurs. (Tr. at 388) Additionally, an electrocardiogram and a stress test were normal. (Tr. at 405)

Ms. Moses went to Cardiology Associates on March 28, 2013, complaining of chest pains and shortness of breath. (Tr. at 458) An electrocardiogram revealed normal sinus rhythm. (Tr. at 458) She underwent a cardiac catheterization in April 2013, which showed triple-vessel non-obstructive disease. (Tr. at 484) A February 2014 record showed regular heart rate and rhythm with no murmurs. (Tr. at 484) A stress test at that time was also normal. (Tr. at 487)

Ms. Moses's final medical complaint relates to her left shoulder. On April 16, 2014, a left shoulder x-ray showed minimal degenerative changes, but no evidence of acute bony abnormality. (Tr. at 519) On June 12, 2014, she saw orthopedist David Gilliam, M.D., who found marked loss of range-of-motion ("ROM") in the left shoulder. (Tr. at 508) Upon examination there were no neurovascular abnormalities. *Id.*

A follow-up MRI on June 19, 2014, showed rotator cuff tendinosis with a small tear involving less than 50% of the tendon, with early diabetic capsulitis. (Tr. at 506) Dr. Gilliam scheduled an injection and manipulation and recommended aggressive physical therapy. *Id*. Ms. Moses underwent 14 physical therapy treatments in July 2014. By July 24, 2014, she had regained full active and passive ROM in her left shoulder. (Tr. at 565)

On October 21, 2014, Ms. Moses underwent arthroscopic rotator cuff repair, and by November 4, 2014, she had no complaints and said she was doing well. (Tr. at 556) On December 2, 2014, her ROM had decreased to 50% of normal, but by January 5, 2015, her ROM had improved to 75% of normal. (Tr. at 555, 551)

Ms. Moses first argues that the ALJ incorrectly assessed her credibility. Before coming to a conclusion on a claimant's credibility, an ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including prior work record. In addition, an ALJ should consider observations by third parties and treating and examining physicians regarding: the claimant's daily activities; the duration, frequency and intensity of pain; precipitating and aggravating factors; dosage, effectiveness and side

effects of medication; and functional restrictions.  *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir.1984).

As the ALJ noted, Ms. Moses provided care for her 14-year-old son, and she could cook, wash clothes, drive, shop, take her son to school, and attend bible study and church. (Tr. at 25, 240-242).  Such daily activities undermine her claims of disability.  See *Shannon v. Chater*, 54 F.3d 484, 487 (8th Cir. 1995); *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

The ALJ also noted poor compliance with treatment.  (Tr. at 28)  Indeed, Ms. Moses stopped taking medication when she ran out, and she did not follow her doctor's instruction to take prednisone.  (Tr. at 26, 299)   She also missed follow-up appointments for arthritis and fibromyalgia.  (Tr. at 299)   A failure to follow a recommended course of treatment weighs against a claimant's credibility.  *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005).  Ms. Moses argues that she could not afford treatment and, therefore, the ALJ should have excused her non-compliance.  She did not establish that free community resources were not available, however, or that she had sought medical treatment but was refused because of her inability to pay.  See *Murphy v. Sullivan*, 953 F.2d 383, 386-7 (8th Cir. 1992).

When Ms. Moses pursued treatment for her shoulder, including surgery and physical therapy, her condition improved.  Impairments that are controllable or amenable to treatment do not support a finding of total disability.  *Mittlestedt v. Apfel*, 204 F.3d

847, 852 (8th Cir. 2000). Finally, she reported no side effects from medication; and no doctor placed any functional limitations on her. (Tr. at 239) The ALJ's credibility finding is supported by substantial evidence.

The ALJ relied on the state-agency medical consultants in finding that Ms. Moses could perform light work. These consultants reviewed the records and made their determinations in June and August of 2013. (Tr. at 79, 105) The consultants gave great weight to the report of Daniel Irons, M.D., who examined Ms. Moses on behalf of the agency on June 19, 2013 and found mild to moderate limitations. (Tr. at 77, 472-476) While Ms. Moses developed a left shoulder problem after these reports, the ALJ considered the more recent evidence concerning the shoulder and limited her left shoulder reaching in the RFC. (Tr. at 24). He noted her improvement with treatment, but still concluded that she would be more limited than the state-agency consultants opined. The ALJ's consideration of all medical opinions was appropriate.

Finally, Ms. Moses contends that the Appeals Council did not consider the new evidence that she submitted after the final hearing decision. The Appeals Council must consider evidence submitted with a request for review if it is, "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995) (quoting *Williams v. Sullivan*, 905 F.2d 214, 216-17 (8th Cir. 1990)). Whether evidence meets these criteria is a question of law that this court reviews *de novo*. *Id*.

To qualify as "new evidence," the submission must be more than merely cumulative of other evidence in the record.  See *Williams*, 905 F.2d at 216 (concluding that psychiatrist's report was new because it was not merely cumulative but instead presented more specific findings and conclusions).  To be deemed "material," the new evidence must be relevant to the claimant's condition for the time period for which benefits were denied.  *Id*.  The additional evidence must not merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition.  See *Jones v. Callahan*, 122 F.3d 1148, 1154 (8th Cir. 1997) (holding immaterial evidence detailing a single incident occurring after decision and noting proper remedy for post-ALJ deterioration is a new application).

Here, the new records reflected Ms. Moses's shoulder surgery in October 2014, and her shoulder injection and manipulation in December 2014.  (Tr. at 551, 560).  Dr. Gilliam recommended physical therapy after the surgery, but there is no evidence that Ms. Moses followed that recommendation.  And the records indicate that post-surgery, Ms. Moses was "doing well"; all puncture wounds and incisions were well healed; and her ROM was improved.  (Tr. at 555, 556, 563)  While in October 2014, her ROM was at only 50%, by January 5, 2015, it had improved to 75%.  Dr. Gilliam recommended a four-month follow-up at the January 2015 visit, which does not suggest an acute or deteriorating problem.  (Tr. at 551)  The Appeals Council "concluded that the additional evidence does not provide a basis for changing the [ALJ's] decision," (Tr. at 2), and this

8

Court agrees. As noted, the proper remedy for post-decision deterioration is a new application, but even so, the new records in this case do not evidence significant deterioration.

## V. **Conclusion:**

There is substantial evidence to support the Commissioner's decision that Ms. Moses was not disabled. The ALJ correctly assessed credibility and gave proper weight to the opinion evidence, and the new evidence does not call for remand or reversal of the ALJ's decision. The finding that Ms. Moses was not disabled within the meaning of the Social Security Act, therefore, should be affirmed. The case should be dismissed, with prejudice.

DATED this 2nd day of March, 2017.

_____
UNITED STATES MAGISTRATE JUDGE